**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

|  |  |
|---|---|
| In the Matter of the Search of the Real Property and Premises of Hannah Natanson, | No. 1:26-sw-00054-WBP |

## REPLY IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER ON THE MOTION FOR RETURN OF PROPERTY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      The Magistrate Judge Erred When He Ordered a Judicial Search of the Devices. ............ 2

        A.      The Proposed Judicial Search of the Seized Material Is Inconsistent with the Separation of Powers and Unworkable. ............................................................. 2

        B.      Movants Do Not Defend the Magistrate Judge's Conclusion That the Government's Proposed Search Would Violate the Fourth Amendment. ..................................... 9

        C.      The First Amendment Allows the Government's Proposed Search. ...................... 9

        D.      The PPA Does Not Require a Judicial Search. ............................................... 16

II.     The Use of a Filter Team Is Appropriate Here and Consistent With Fourth Circuit Precedent. .................................................................................................... 16

III.    The Government Reasonably Proceeded via Search Warrant and Not a Subpoena. ......... 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. United States*,
509 U.S. 544 (1993) ............................................................................................ 12, 13

*Alfred A. Knopf, Inc. v. Colby*,
509 F.2d 1362 (4th Cir. 1975) ................................................................................. 6

*Arcara v. Cloud Books, Inc.*,
478 U.S. 697 (1986) ............................................................................................... 14

*Branzburg v. Hayes*,
408 U.S. 665 (1972) .......................................................................... 2, 9, 13, 14, 15

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) ..................................................................... 12, 13, 14

*Colby v. Halperin*,
656 F.2d 70 (4th Cir. 1981) ..................................................................................... 6

*Dep't of the Navy v. Egan*,
484 U.S. 518 (1988) ..................................................................................... 1, 6, 18

*El-Masri v. United States*,
479 F.3d 296 (4th Cir. 2007) ................................................................................... 7

*Fort Wayne Books, Inc. v. Indiana*,
489 U.S. 46 (1989) ................................................................................................. 15

*Garcia v. Montgomery County*,
145 F. Supp. 3d 492 (D. Md. 2015) ....................................................................... 14

*Guest v. Leis*,
255 F.3d 325 (6th Cir. 2001) ................................................................................. 16

*Heller v. New York*,
413 U.S. 483 (1973) ............................................................................................... 15

*In re Grand Jury Subpoenas Dated Dec. 10, 1987*,
926 F.2d 847 (9th Cir. 1991) ................................................................................. 19

*In re Ingram*,
915 F. Supp. 2d 761 (E.D. La. 2012) ..................................................................... 16

*In re Search of Elec. Commc'ns*,
802 F.3d 516 (3d Cir. 2015) ................................................................................. 4

*In re Search Warrant Issued June 13, 2019*,
942 F.3d 159 (4th Cir. 2019) .............................................................. 1, 3, 17, 18

*In re Shain*,
978 F.2d 850 (4th Cir. 1992) ............................................................................. 10

*In re Subpoena Duces Tecum*,
228 F.3d 341 (4th Cir. 2000) ........................................................................ 10, 19

*Klitzman, Klitzman & Gallagher v. Krut*,
744 F.2d 955 (3d Cir. 1984) ................................................................................ 3

*Lo-Ji Sales, Inc. v. New York*,
442 U.S. 319 (1979) ........................................................................ 1, 2, 3, 4, 5

*Meyer v. City of Marion*,
776 F. Supp. 3d 991 (D. Kan. 2025) .................................................................. 12

*New York Times Co. v. United States*,
403 U.S. 713 (1971) ........................................................................................... 13

*Ramsden v. United States*,
2 F.3d 322 (9th Cir. 1993) ................................................................................. 11

*Robinson v. Fetterman,*
378 F. Supp. 2d 534 (E.D. Pa. 2005) ................................................................. 12

*Snepp v. United States*,
444 U.S. 507 (1980) ............................................................................................. 5

*Sterling v. Tenet*,
416 F.3d 338 (4th Cir. 2005) ............................................................................... 6

*Tilden v. Tenet*,
140 F. Supp. 2d 623 (E.D. Va. 2000) ................................................................... 7

*United States v. Avenatti*,
559 F. Supp. 3d 274 (S.D.N.Y. 2021) ................................................................ 16

*United States v. Cobb*,
970 F.3d 319 (4th Cir. 2020) ............................................................................. 11

*United States v. Comprehensive Drug Testing, Inc.*,
621 F.3d 1162 (9th Cir. 2010) (per curiam) ........................................................ 4

iii

*United States v. Fowler*,
  932 F.2d 306 (4th Cir. 1991) ............................................................................. 17

*United States v. Hubbell*,
  530 U.S. 27 (2000) ............................................................................................ 20

*United States v. Jones*,
  2016 WL 8933629 (E.D. Va. July 26, 2016)....................................................... 7

*United States v. Rayburn House Off. Bldg.*,
  497 F.3d 654 (D.C. Cir. 2007)...................................................................... 3, 19

*United States v. Reifler*,
  2021 WL 2253134 (M.D.N.C. Jun. 2, 2021)..................................................... 17

*United States v. Sterling*,
  724 F.3d 482 (4th Cir. 2013) ............................................................ 2, 10, 11, 14

*United States v. Zelaya-Veliz*,
  94 F.4th 321 (4th Cir. 2024) ........................................................................ 3, 11

*Washington v. J-R Distribs., Inc.*,
  765 P.2d 281 (Wash. 1988) ......................................................................... 12, 15

*Zurcher v. Stanford Daily*,
  436 U.S. 547 (1978) ...................................................................... 4, 13, 14, 19

**Statutes**

18 U.S.C. app. 3 ..................................................................................................... 7

42 U.S.C. § 2000aa-6............................................................................................ 16

**Rules**

Fed. R. Crim. P. 41 ................................................................................................. 3

**Regulations**

18 C.F.R. § 3a.11 ................................................................................................. 19

28 C.F.R. § 17.18................................................................................................. 19

Exec. Order No. 13,526 ....................................................................................... 6, 7

**INTRODUCTION**

In their opposition, Movants Hannah Natanson and the Washington Post ask the Court to perform a search barred by the separation of powers, all to protect a purported First Amendment reporter's privilege that does not exist. *See* ECF No. 81 (Opp.). Those arguments are contrary to applicable law, and this Court should overrule the Magistrate Judge's opinion holding otherwise.

The Magistrate Judge below has ordered that he, and not the Government's filter team, will search the information from the electronic devices seized pursuant to the criminal search warrant in this case and identify the responsive materials to be turned over to the government. *See* Memorandum Opinion and Order, ECF No. 62 (Opinion). The law precludes such judicial participation in searches as wholly incompatible with the "neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326 (1979). The judge responsible for the evaluation of probable cause in issuing a warrant must not "allow[] himself to become a member, if not the leader, of the search party." *Id.*; *see* ECF No. 74 at 10–11 (Obj.). That principle is even more important here because the search authorized by this warrant involves the identification and seizure of classified national defense information, a responsibility the law entrusts to the Executive's expertise. *See Dep't of the Navy v. Egan*, 484 U.S. 518, 527–29 (1988). The judicial search ordered by the Magistrate Judge—in which the Court will conduct the review for responsiveness—is thus wholly distinguishable from the more limited judicial supervision of the review for attorney-client privilege materials contemplated in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) (*Baltimore Criminal Defense Firm*). In short, responsiveness review remains the role of the Executive.

Nothing in the First Amendment requires a different outcome. Movants' arguments rely on the presumed existence of a "First Amendment reporter's privilege in a criminal proceeding"

1

that the Fourth Circuit has directly rejected. *See United States v. Sterling*, 724 F.3d 482, 496 (4th Cir. 2013). There is no basis to limit that holding, which expressly applied to the government's ability "to obtain evidence of criminal conduct from a reporter," to only subpoenaed testimony. *Id.* Nor does any authority support finding a prior restraint here based on a purported chill on source relationships. *Branzburg v. Hayes*, 408 U.S. 665, 695 (1972). Reporters, including Ms. Natanson, remain subject to court-authorized legal process issued in criminal cases, just like any other citizen. The valid search warrant in this case should similarly be treated like any other.

Accordingly, this Court should reject the Magistrate's Judge's novel proposal to conduct the search and should adopt the Government's proposal to allow a filter team to review the devices. Contrary to Movants' rhetoric, filter teams are common, and the Government's proposal complies with applicable precedent and allows the Government to lawfully gather evidence in support of an impending prosecution of a serious national security crime while adequately protecting Movants' interests in any privileged material.

## ARGUMENT

I.      **The Magistrate Judge Erred When He Ordered a Judicial Search of the Devices.**

      A.  **The Proposed Judicial Search of the Seized Material Is Inconsistent with the Separation of Powers and Unworkable.**

            1.  **The Judicial Search Is Inconsistent with the Separation of Powers.**

By ordering that he would search the devices for information responsive to the search warrant, the Magistrate Judge made himself "a member, if not the leader" of the search party, just as the judge improperly did in *Lo-Ji*. 442 U.S. at 327. That judge issued a search warrant for obscene films at a particular store before accompanying investigators to the store, reviewing various materials, and ordering investigators to seize materials which he had probable cause to believe were obscene. *See id.* at 321–24. Here, the Magistrate Judge has ordered a very similar

2

process.  He would search Ms. Natanson's devices and identify the "subset" of material that the Government can seize under the warrant.  Opinion at 19–20.

That is a search, not a "post-seizure judicial privilege review."  Opp. 25.  When a warrant authorizes the search and seizure of electronic devices for evidence contained on those devices, the Government normally "first obtains" the data, reviews it, and "then seizes only the fruits, evidence, or instrumentalities of enumerated crimes" identified within that data.  *United States v. Zelaya-Veliz*, 94 F.4th 321, 338 (4th Cir. 2024); *see* Fed. R. Crim. P. 41(a)(2)(C), (e), (f) (contemplating execution of warrants by federal law enforcement "officer[s]" and "later review" of the seized material).  Here, like the judge in *Lo-Ji*, the Magistrate Judge would take on that role of searching the voluminous material and identifying the "limited information authorized by the search warrant" to be seized.  Opinion at 22.  If approved, this approach could have sweeping ramifications for judicial participation in a wide range of investigations involving seized devices (from national security to child pornography cases and beyond).

Movants respond that courts "agree that judicial oversight is not only constitutionally permissible but sometimes required in circumstances like these."  Opp. 25.  But those courts authorized judicial officers to make privilege determinations *after* the Government identified responsive materials.  *See Baltimore Criminal Defense Firm*, 942 F.3d at 176 ("[T]he resolution of [a privilege] dispute is a judicial function."); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 962 (3d Cir. 1984) (suggesting that a special master would review only "any material that the [subject] objects to producing" so that he "could make a ruling" on whether to hand over those documents); *see also United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 662–63 (D.C. Cir.

3

2007) (acknowledging that judicial review would occur after the assertion of a privilege).[1] They did not authorize a judicial officer to identify responsive material and direct the Government to seize that material, as the Magistrate Judge would do here. A Magistrate Judge directing "a government technician" to "extract[] from the review platform any documents identified [by the magistrate] as responsive," Opp. 27, is just *Lo-Ji* with modern technology.

Movants similarly apply far too broadly decisions discussing "the importance of judicial scrutiny" in cases "involving seizures of sensitive information." Opp. 25. In *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978), the Supreme Court rigorously applied the Fourth Amendment's "preconditions for a warrant" that implicated newspaper offices. *Zurcher* applies at the front end (the issuance of a warrant), not the back end (the execution and search). And it is undisputed that the Magistrate Judge here sufficiently scrutinized the warrant application (and communicated concerns to the Government), just as *Zurcher* instructs. *See* Obj. 22. Similarly, the Ninth Circuit in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam) encouraged judicial officers to "strik[e] the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures" by holding the Government to protocols imposed by a warrant, *see id.* at 1172, and, when appropriate, ordering return of evidence seized in "willfu[l] disregar[d] [of] limitations in a search warrant," *see id.* at 1174. That case, which is not controlling in any event, does not endorse a judicial search of all material collected under a valid search warrant.

---

[1] When the Third Circuit noted that courts can "require a different method of review in any particular case," *In re Search of Elec. Commc'ns*, 802 F.3d 516, 530 n.53 (3d Cir. 2015) (cited at Opp. 25), the court was discussing how to review documents presumptively "protected by the attorney-client privilege and work-product doctrine." *See id.* at 530. The takeaway is that a court can review documents for privilege, not for whether they fall within the scope of a warrant.

At bottom, a search is "essentially a police operation." *Lo-Ji*, 442 U.S. at 327. The Magistrate Judge cannot convert that Executive function into a Judicial one.

### 2. The Executive Must Search These Devices to Protect the Classified and National Defense Information on Them.

Movants reject the Government's argument about classified information as "a straw man." Opp. 26. But they do not contest that the devices likely contain classified and national defense information or that the Government has a compelling interest in protecting that material. *Accord Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam). Instead, they think the Magistrate Judge will review for only responsiveness and will "not need to figure out whether any such records are classified." Opp. 26.

Movants miss the point, which is that responsiveness in many instances will depend *on* whether the materials are classified or national defense information, and that the Magistrate Judge has no expertise in identifying that information. Movants do not contest that Perez-Lugones obfuscated the classified nature of certain documents, such that classified material will not be easily identifiable. And there will likely be materials that do not appear responsive on their face except for the inclusion of classified material transferred by Perez-Lugones. For example, suppose Ms. Natanson emailed her editor regarding an unnamed source and included snippets of information that source shared. Because the source is unnamed, the Magistrate Judge will not be able to tell on the face of the document whether that email "relat[es] to" Perez-Lugones. ECF No. 9-5 at 5 (ECF pagination) (Att. B). And the Magistrate Judge would have difficulty recognizing the snippets as classified—only an original classification authority will be able to reliably assess classification within the scope of the warrant. Because the Magistrate Judge wishes to exclude those classification and subject matter experts from the search process, there is a significant risk that he will return classified information to Ms. Natanson.

5

The Government must be allowed to search the devices to foreclose that possibility and to investigate a serious crime. Only the original classification authorities and their designees residing exclusively in the Executive Branch, *see* Exec. Order No. 13,526 § 1.3(a), have "[t]he authority to protect such information" and the "necessary expertise" to identify it, *Egan*, 484 U.S. at 527, 529. A judicial search further creates the chance for unauthorized and unintended dissemination of classified material, even "inadvertently." *Colby v. Halperin*, 656 F.2d 70, 72 (4th Cir. 1981); *see also Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1369 (4th Cir. 1975) ("It is not to slight judges, . . . to suggest that any such disclosure carries with it serious risk that highly sensitive information may be compromised."). Indeed, the Fourth Circuit has expressly warned that "special accommodations" like this bespoke judicial search procedure "give rise to added opportunity for leaked information." *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005). By contrast, the Executive Branch is constitutionally empowered to manage that risk and make the necessary "[p]redictive judgment[s]" about it. *Egan*, 484 U.S. at 529. Those judgments must be made at the front end to avoid any unauthorized disclosure, not at some "later" date during the Magistrate Judge's process. Opp. 26. The Government can account for those risks by conducting its own search. The protection of classified and national defense information requires no less.

Movants suggest that these interests are less important here because "most of the classified information was published in The Post already." Opp. 26 n.11. That is irrelevant. Classified material can be declassified pursuant only to specific procedures. *See* Exec. Order No. 13,526 § 3. Those procedures have not been invoked as to the material at issue. "It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Knopf*, 509 F.2d at 1370. Absent evidence that an Executive official has declassified this

6

material—and there is none—the Government retains an overwhelmingly strong interest in protecting the material against unauthorized disclosure, including classified material that is otherwise present and may be seized under the plain-view doctrine.

Finally, the Magistrate Judge and his designated personnel do not require access to this information. *See* Obj. 14–15. Movants say otherwise, relying on the Classified Information Procedure Act ("CIPA"), 18 U.S.C. app. 3 §§ 1–16. *See* Opp. 27. But CIPA provides no authority for courts to conduct searches. And CIPA applies only in criminal prosecutions. *See* 18 U.S.C. app. 3 § 3 (directing court, upon a motion from the Government, to "protect against the disclosure of any classified information disclosed by the United States to any defendant in any *criminal* case" (emphasis added)). CIPA reflects Congress's judgment that criminal defendants might need access to classified material as part of their constitutional right to mount a defense and that certain procedures are necessary to facilitate that access. CIPA does not give judges resolving "*civil* motions in equity*" like this Rule 41(g) motion a need to know classified information. *United States v. Jones*, 2016 WL 8933629, at *2 (E.D. Va. July 26, 2016) (emphasis added). Courts routinely refuse to provide access to classified information in such civil cases. *See, e.g.*, *El-Masri v. United States*, 479 F.3d 296, 311 (4th Cir. 2007); *Tilden v. Tenet*, 140 F. Supp. 2d 623, 627 (E.D. Va. 2000). In reality, the personnel with a need to know the classified material are the Executive Branch investigators and agents already trained in the identification and handling of classified material. They have received "a determination within the executive branch" that they require "access to specific classified information in order to perform or assist in a lawful and authorized government function." Exec. Order No. 13,526 § 6.1(dd) (defining need-to-know). The Magistrate Judge and his personnel have not.

### 3. Logistical and Feasibility Issues of a Judicial Search Remain.

In addition to these objections, the judicial search ordered by the Magistrate Judge will raise a host of logistical issues, including where the Magistrate Judge will conduct the search and what technology and equipment he will use. *See* Obj. 15–16. Movants criticize this argument as "premature" because the magistrate judge has yet to determine logistics and will consult the parties. Opp. 27. The present posture, however, does not foreclose the Magistrate Judge from later adopting procedures with inevitable logistical issues that would not be present under a filter team protocol.[2] In fact, the magistrate judge has already indicated his preference for a more difficult procedure. He wishes to conduct the search in a SCIF inside the Alexandria courthouse. *See* Mar. 5, 2026 Transcript at 16:3-9. The Government has since explained that this procedure would require particular hardware and would prevent the Magistrate Judge and his staff from obtaining technical support in the event they need it. *See* ECF No. 88 at 14–15.

Contrary to Movants' assertions, such issues would not arise under a filter team, which could more easily fulfill the technological requirements for this review. *Contra* Opp. 27. The Government would not need to provide special equipment, and reviewing personnel would have training and experience on the chosen review platform. *See* ECF No. 88 at 18. And whether some procedural and technical steps will occur regardless of who conducts the search, *see* Opp. 27, a search by the Magistrate Judge would either make those steps harder or add more steps, thereby making the process more time-consuming and increasing the opportunity for error.[3]

---

[2] The Government continues to reserve all rights with respect to the details of the magistrate judge's procedure, once they are determined. *See* Obj. 10 n.5.

[3] Movants belatedly suggest that the Magistrate Judge can "implement procedures to ensure that a government technician (rather than the Court) extracts from the review platform any documents identified as responsive." Opp. 27. This suggestion is hard to square with Movants' stated

**B. Movants Do Not Defend the Magistrate Judge's Conclusion That the Government's Proposed Search Would Violate the Fourth Amendment.**

Movants do not contest or rebut the Government's arguments that its search of the devices would be consistent with the Fourth Amendment. *See* Obj. 17–19. Nor do they defend the Magistrate Judge's conclusion that a search by the Government would "authorize an unlawful general warrant." Opinion at 20. They instead acknowledge that "[t]he present case has nothing to do with an open-ended warrant." Opp. 25. This Court should reverse the Magistrate Judge's contrary conclusion for all the reasons previously stated by the Government.

**C. The First Amendment Allows the Government's Proposed Search.**

The First Amendment does not require a judicial search here. Movants' two arguments to the contrary are meritless. First, the non-responsive materials on the devices are not "privileged" under the First Amendment. Opp. 10. Second, review by the Government does not constitute a prior restraint. *See id.* at 19–24.

**1. There Is No First Amendment Privilege Here.**

There is no reporter's privilege protecting a reporter from a court-issued search warrant. Over 50 years ago, the Supreme Court ruled that reporters cannot refuse to give testimony when subpoenaed to do so by a grand jury, even though such testimony would burden the press. *See Branzburg*, 408 U.S. at 682. In other words, the First Amendment does not exempt journalists "from the ordinary duty of all other citizens to furnish relevant information to a grand jury performing an important public function." *Id.* at 697. And the Fourth Circuit has for over 30 years correctly interpreted *Branzburg* to foreclose "a reporter's privilege not to testify in criminal prosecutions about relevant evidence known to the reporter, regardless of whether the information

---

discomfort with the FBI's further involvement, *see* Mar. 5, 2026 Transcript at 36:21-37:6, even though the FBI presumably will provide the necessary technicians.

was obtained during newsgathering." *In re Shain*, 978 F.2d 850, 852 (4th Cir. 1992). The Fourth Circuit reiterated that conclusion in *Sterling* in language that could not have been clearer: "[S]o long as the subpoena is issued in good faith and is based on a legitimated need of law enforcement, the government need not make any special showing to obtain evidence of criminal conduct from a reporter in a criminal proceeding." *Sterling*, 724 F.3d at 496 (alteration omitted).

The search warrant here is based on a legitimate need to locate evidence of serious crimes—the unauthorized disclosure of classified national defense information. That is precisely why the Magistrate Judge signed the warrant in the first place. And Movants do not assert that the Government sought the search warrant in bad faith. Nor could they given the Government's "compelling interest in collecting evidence" of that crime, as the Magistrate Judge recognized. Opinion at 17. *Sterling*'s reasoning, then, requires that Ms. Natanson respond to a search warrant based on probable cause "like an ordinary citizen" would.[4] *Sterling*, 724 F.3d at 498.

Movants attempt to limit *Sterling* to "subpoenaed testimony," Opp. 12, but *Sterling* does not support that distinction. *Sterling* expressly supports the Government's general ability to "obtain evidence of criminal conduct from a reporter in a criminal proceeding." *Sterling*, 724 F.3d at 496. And the same "compelling public interest in effective criminal investigation and prosecution" animating subpoenas also animates search warrants. *Sterling*, 724 F.3d at 498. Indeed, search warrants, unlike subpoenas, must be authorized by a neutral judicial officer. *See In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000). *Sterling* therefore applies here and conclusively decides that there is no privilege over the non-responsive material on the devices.

---

[4] Movants cite multiple *civil* cases in their brief that recognize a qualified reporter's privilege. *See* Opp. 10–11. But this case involves a criminal search warrant, a tool of criminal law enforcement animated by a "compelling public interest . . . that simply is not present in civil cases." *Sterling*, 724 F.3d at 498. Therefore, *Sterling* governs.

10

Movants also argue that the non-responsive material on the devices is privileged under *Sterling* because that case supposedly protects information "bearing only a remote and tenuous relationship to the subject of the investigation" or information implicating "confidential source relationships without a legitimate need." Opp. 11 (quoting *Sterling*, 724 F.3d at 498–99). Even if Movants read *Sterling* correctly on this point—and the Government does not concede that they do—all of the material on the devices is presumptively relevant to the investigation at this stage. After all, the Government does not know where responsive information exists on the devices because it has not yet been allowed to conduct a search. But the Government is entitled to make a reasonable search for that information pursuant to the valid search warrant. *See Zelaya-Veliz*, 94 F.4th at 337–38. In fact, the Government's need to search these devices is "a need for the property in an investigation or prosecution" such that Rule 41(g) does not compel return of any part of the devices now. *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993); *contra* Opp. 28.

Movants' contrary theory puts the cart before the horse—asserting that material is unconnected to an investigation before a search can occur. That is not the law. *See Zelaya-Veliz*, 94 F.4th at 337 (a warrant compelling disclosure of "a wide swath of personal information" is still legitimate when it permits only "the subsequent seizure of the fruits, evidence, or instrumentalities of violations of enumerated federal statutes"); *United States v. Cobb*, 970 F.3d 319, 328 (4th Cir. 2020) (warrant allowing search of computer was constitutional because it "confined the executing officers' discretion" by permitting seizure only of "evidence of a specific illegal activity"). Rather, the Government's legitimate need exists until it concludes its search, and invoking some privilege over hidden non-responsive information is premature. To hold otherwise would improperly create reporter-specific procedures for search warrants out of whole cloth. *See* Obj. 22–23.

11

## 2.    There Is No Prior Restraint Here.

Movants are still incorrect that review by a filter team constitutes a prior restraint.  As the Government explained in its objections, a prior restraint is a particular type of restriction on speech. *See* Obj. 24.  Namely, it is a government action "that suppresses speech—or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression." *Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018).  The Government's conduct here and its proposed review procedure meet neither criterion.

The Government is not attempting speech suppression, which is a necessary component of a prior restraint.[5]  Further, the Supreme Court has defined a prior restraint as an action that "*forbid[s]* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original).[6]  To reiterate, the Government is not forbidding anything by Ms. Natanson, nor is her expression "foreclosed."  Opp. 21 (citing *Washington v. J-R Distribs., Inc.*, 765 P.2d 281, 287–89 (Wash. 1988) (en banc)).  She may publish, reach out to current sources, or cultivate new sources, all without permission from any Government actor.  Movants never contest this.  *See* Opp. 23 (stating that Ms. Natanson can "start over from scratch").  This case is therefore categorically unlike the

---

[5] The Government's actions here do not resemble the actions described in Movants' cases. *See* Opp. 19–20.  In *Meyer v. City of Marion*, investigators allegedly sought a search warrant at a newspaper office to "take down" a mayor's chief enemies.  776 F. Supp. 3d 991, 1010 (D. Kan. 2025).  Similarly, the officers in *Robinson v. Fetterman* arrested a man videotaping them because he "annoy[ed] or offend[ed] them."  378 F. Supp. 2d 534, 542 (E.D. Pa. 2005). There are no such facts even alleged here—the Government seeks evidence of a serious crime, not to silence a speaker for her criticisms of the Government.

[6] Movants again dispute the applicability of *Alexander* to this case.  *See* Opp. 21 n.7.  The Government continues to believe *Alexander*'s distinction between an action forbidding expressive activities and an order depriving someone of assets involved in wrongdoing explains why there is no prior restraint here.  *See* Obj. 25.  Regardless, Movants cannot argue there is a prior restraint and then dismiss as "inapposite" the Supreme Court's definition of a prior restraint.  Opp. 21 n.7.

12

Pentagon Papers case, where the Government sought a court order "to block the publication of material" by a journalist. *New York Times Co. v. United States*, 403 U.S. 713, 725 (1971) (Brennan, J., concurring). Here, the Government is not seeking to block anything. It wants only to collect evidence of a crime, evidence that all agree is on Ms. Natanson's devices.

Movants' primary response is that a Government review would create "the risk of exposure" for her "more than 1,200 confidential federal sources," apparently chilling them. Opp. 21–22. But that risk could be raised any time a reporter's material is subject to a search warrant or subpoena. Yet the Supreme Court has rejected the notion that materials presumptively protected by the First Amendment are "necessarily immune from seizure under warrant." *Zurcher*, 436 U.S. at 567. To hold that a prior restraint exists anytime the Government searches devices that contain criminal evidence and First Amendment material would "thi[n] by overextension" the doctrine of prior restraints. *Citizens United*, 882 F.3d at 386. It would also essentially lead to startling limitations on the Government's ability to search for evidence of crimes. *See* Obj. 25–26 & n.8. In any event, a threat to chill is not the same as an action affirmatively "*forbidding*" communications before they occur. *Alexander*, 509 U.S. at 550. Not all impositions on the press constitute prior restraints. *See, e.g.*, *Branzburg*, 408 U.S. at 682 ("[T]he First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability.").

Movants' argument therefore rests on the alleged chill on Ms. Natanson's sources from a Government search. *Branzburg* squarely forecloses this argument. There, the Supreme Court ruled that journalists could not refuse to testify before a grand jury even after the Court assumed exactly what Movants now assert—that "an undetermined number of informants not themselves implicated in crime will nevertheless, for whatever reason, refuse to talk to newsmen [because]

13

they fear identification by a reporter." *Branzburg*, 408 U.S. at 695; *see also* Opp. 19 (arguing that Government review "will discourage confidential sources from confiding in The Post and Natanson"); *id.* at 21 (noting that Ms. Natanson's sources "were willing to disclose information based on an expectation of confidentiality"). "[P]ublic interest in possible future news" does not take "precedence over the public interest in pursuing and prosecuting those crimes reported to the press by informants and in thus deterring the commission of such crimes in the future." *Branzburg*, 408 U.S. at 695; *see Sterling*, 724 F.3d at 493 (reiterating that a "chill on future newsgathering" does not create a reporter's privilege in criminal proceedings). Just as the chill on sources that might result from a reporter's grand jury testimony involved "no prior restraint or restriction on what the press may publish," *id.* at 681, neither does a Government review of devices for evidence responsive to a search warrant. And even granting that Government review makes Ms. Natanson's activities more "difficult," that alone does not create a prior restraint. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 n.2 (1986) (order closing bookstore not a prior restraint because the owners were "free to carry on their bookselling locations at another location, *even if such locations are difficult to find* (emphasis added)). Movants also cannot rely on *Zurcher*. Even though no seizure occurred in that case, the Supreme Court expressly noted that "[n]ot every such seizure, and not even most, will impose a prior restraint." *Zurcher*, 436 U.S. at 567.

In addition to the above, there is no prior restraint because the Government has not acted based on the "content" of Ms. Natanson's expression. *Citizens United*, 882 F.3d at 386. It has seized the devices and intends to search them for evidence of a crime, not because of Ms. Natanson's message.[7] *See* Obj. 25. The obscenity cases cited by Movants are distinguishable on

---

[7] This is unlike the officer in *Garcia v. Montgomery County* who seized film of police activities "for the purpose of preventing the dissemination of the information on the recording"—*i.e.*, because of the film's content. 145 F. Supp. 3d 492, 510 (D. Md. 2015) (cited at Opp. 19).

this basis.  *See* Opp. 21–22.  The seizures in those cases occurred because the material itself was criminal, *i.e.*, based on the content of that material.  *See J-R Distribs.*, 765 P.2d at 283 (seizing alleged pornography); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 50–53 (1989) (seizing allegedly obscene materials); *Heller v. New York*, 413 U.S. 483, 485 (1973) (seizing allegedly obscene film).  Movants also say that the Government's actions are content-based because the Government supposedly "targeted Natanson specifically because of her reporting related to Perez-Lugones."  Opp. 22 n.8.  Although Ms. Natanson's reporting is what started the Government's investigation, *see* Declaration of Roman Rozhavsky ¶ 5, ECF No. 35-1, the probable cause for a search warrant for criminal evidence in her possession was based on the fact that her reporting used classified information that was the fruits of a crime, not the content of that reporting.  After all, if Movants are correct, then subpoenas for a reporter's testimony about his source for a published story—which is exactly the fact pattern of the Kentucky subpoenas in *Branzburg*—would be unlawful too.  *See Branzburg*, 408 U.S. at 668–71.

*   *   *

For all these reasons, the First Amendment does not foreclose a review of the devices by the Government.  Nonetheless, the Government like the Magistrate Judge remains sensitive to the First Amendment equities in this case.  *See* Opinion at 12–13.  The Government's proposed filter procedure will ensure that First Amendment material unrelated to this investigation does not reach the investigating agents.  The Government also is willing to prioritize providing Ms. Natanson's contact list back to her once the filter team has determined that the list contains no evidence within the scope of the warrant.  Movants assert that the deprivation of this list is the core of an alleged restraint, so its return should obviate any such concerns.

15

### D.  The PPA Does Not Require a Judicial Search.

Movants do not deny that any evidence regarding Perez-Lugones's crimes is not protected by the Privacy Protection Act (PPA).  *See* Opp. 12.  They argue instead that a judicial search will prevent law enforcement from searching PPA-protected materials.  *See id.* at 13.  Endorsing that argument would require investigators, however, to seek a judicial search every time a device contains PPA-protected material alongside criminal evidence.  Investigators in other words would be prevented "from seizing evidence located on a computer" possessed by a journalist until a judicial officer could conduct the search.  *Guest v. Leis*, 255 F.3d 325, 342 (6th Cir. 2001).  The statute cannot be interpreted to impose such a large hindrance on investigators' ability to locate evidence, particularly when the PPA protects only certain materials and expressly permits introduction into evidence any property obtained in violation of the statute.  *See* 42 U.S.C. § 2000aa-6(e).  Again, the Government's filter protocol is designed to respect the boundaries that the PPA imposes without unduly interfering in the search for evidence.[8]

### II.    The Use of a Filter Team Is Appropriate Here and Consistent With Fourth Circuit Precedent.

The use of a filter team is appropriate here for all the reasons stated in the Government's objections.  *See* Obj. 26–29.  In response, Movants denigrate the practice of filter teams, baldly stating that "history proves that filter teams do not work."  Opp. 17.  Multiple courts across the years beg to differ.  *See, e.g.*, *United States v. Avenatti*, 559 F. Supp. 3d 274, 282 (S.D.N.Y. 2021) (collecting authorities to support statement that filter teams "ha[ve] been deemed adequate in numerous cases to protect attorney-client communications" (citation omitted)); *In re Ingram*, 915

---

[8] The magistrate judge did not rely on the PPA as authority for a judicial search.  Movants point out that the Magistrate Judge "may well have" rejected the search warrant application on PPA grounds.  *See* Opp. 4.  That is an incomplete recitation of the magistrate judge's opinion, which also stated that he might have "authorized a warrant regardless."  Opinion at 12.

F. Supp. 2d 761, 764 (E.D. La. 2012) (same). And even after *Baltimore Criminal Defense Firm*, at least one court in this circuit has approved a filter team to examine documents for attorney-client and work-product privilege and to release the non-privileged material directly to the investigating team. *See United States v. Reifler*, 2021 WL 2253134 (M.D.N.C. Jun. 2, 2021). Movants therefore cannot argue that filter teams are per se illegal or wrongful. If they were, so many courts would not rely on them.

Thus, Movants' only way to defeat the proposed filter team approach is to liken this case to "the unique facts and circumstances" of *Baltimore Criminal Defense Firm*. 942 F.3d at 183 (Rushing, J., concurring). But there are multiple dispositive differences between the cases. Most important is the presence of classified and national defense information among the evidence on Ms. Natanson's devices, a distinction that Movants do not discuss. Classified material is the property of the Government, *see United States v. Fowler*, 932 F.2d 306, 309–10 (4th Cir. 1991), and the proper handling of it is not "a judicial function" like the determination about whether a privilege applies or not, Opp. 17; *see also* Obj. 28. Movants also fail to address the other key distinctions from *Baltimore Criminal Defense Firm*. One "serious defect" of that filter protocol was that it allowed investigators to seek *ex parte* waivers of attorney-client privilege. *Baltimore Criminal Defense Firm*, 942 F.3d at 180. The filter protocol here includes no such authorization.

This filter protocol also does not present the same appearance of unfairness. The filter team in *Baltimore Criminal Defense Firm* "include[d] prosecutors employed in the same judicial district where Law Firm clients [we]re being investigated by, or we[re] being prosecuted by, the United States Attorney." *Id.* at 182 (quotation marks omitted). The potential for unfairness in that situation is clear—filter agents might see records related to the subjects of their own investigations. That "especially apparent" appearance of unfairness is simply not present here, given that the

17

District of Maryland is not currently investigating other leaks of classified information that involve Ms. Natanson. *Id.* In short, the "unique facts and circumstances of this case" are different from *Baltimore Criminal Defense Firm* and support searching the devices via a filter team. *Id.* at 183 (Rushing, J., concurring).

Movants say that allowing a filter team here "disregards the privileges at stake"—by which they apparently mean the attorney-client and work-product privileges. Opp. 18 (citing cases about those privileges). As an initial matter, *Baltimore Criminal Defense Firm* does not stand for the proposition that a filter team is per se improper every time those privileges cover some of the material in the Government's possession. As noted, filter teams are commonly used to protect material potentially protected by those privileges, and the Fourth Circuit clearly limited its holding to the specific "circumstances" before it. *Baltimore Criminal Defense Firm*, 942 F.3d at 181. To be fair, Movants say there are other privileges and equities involved, but they emphasize only the First Amendment, which was not at issue in *Baltimore Criminal Defense Firm* and, regardless, provides no reason to deviate from review by a filter team. *See supra* at 9–15. And as for the material presumptively privileged by the attorney-client and work-product protections, the Government's filter protocol incorporates Movants' suggestions for search terms related to those protections.

On the other hand, not allowing the Government to review would essentially prevent the Executive Branch from performing a function constitutionally delegated to it. The Court should not so "disregard[]" the Government's unique interest in classified material. Opp. 18; *see also Egan*, 484 U.S. at 527 ("The authority to protect [classified] information falls on the President as head of the Executive Branch and as Commander in Chief."). That interest is particularly acute here where the evidence, if disclosed, is reasonably likely to cause "exceptionally grave damage"

18

and/or "serious damage" to national security, 18 C.F.R. § 3a.11(a)(1), (2) (explaining Top Secret and Secret designations), and/or relates to sensitive intelligence sources, methods, and analytical processes, *see* 28 C.F.R. § 17.18(a) (describing Sensitive Compartmented Information). The Government is entitled "an opportunity to assert" its unique interest in classified material on the front end, Opp. 17, just as Congressman Jefferson was to assert his own unique legislative interest before investigators viewed legislative material protected by the Speech or Debate Clause, *see Rayburn*, 497 F.3d at 662. The Government's proposed filter procedure provides that opportunity while ensuring that any actually privileged information does not reach the investigating team.

**III.    The Government Reasonably Proceeded via Search Warrant and Not a Subpoena.**

Movants assert multiple times that the Government could have and should have subpoenaed Ms. Natanson rather than seek a search warrant. *See* Opp. 7, 24. But courts do not second guess such investigative decisions (for good reason). The Government need not "proceed by subpoena *duces tecum*" rather than a judicially authorized search warrant. *Zurcher*, 436 U.S. at 559. Nor is it unreasonable (or uncommon) for the Government to utilize both warrants and subpoenas in an investigation. *See, e.g.*, *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 851–55 (9th Cir. 1991).

In any event, the Government had good reason here to utilize the "advantages of speed and surprise" that come with a search warrant. *In re Subpoena Duces Tecum*, 228 F.3d at 348. All acknowledge that Ms. Natanson conducted much communication via Signal, an app that allows users to create a custom timeframe "in which messages disappear or delete." Rozhavsky Decl. ¶ 40; *see also* Decl. of Hannah Natanson ¶ 39, ECF No. 9-1; Opinion at 5. The Government therefore needed to move quickly to collect any Signal messages before they were deleted. Movants dismiss this motivation because investigators knew at the time of Perez-Lugones's arrest that the messages between him and Ms. Natanson were set for a 24-hour deletion period. *See* Opp.

19

24 n.10.  The warrant, however, authorized seizure of messages "relating to" Perez-Lugones as well as "received from" him.  Att. B at 5 (ECF pagination).  The Government could not have known the auto deletion period for Signal messages "relating to" Perez-Lugones within the scope of the warrant, but it knew that such messages could be on a timer for deletion.

Thus, the Government needed to act fast.  The time needed by a reasonably conscientious recipient of a subpoena to preserve the requested material would have exceeded the auto-deletion period of Signal messages that were responsive to the warrant.[9]  Moreover, Ms. Natanson would likely have raised objections to testimonial productions and made many of the same arguments presented in this litigation had the Government served her with a subpoena, further slowing down the release of information.  *See, e.g.*, *United States v. Hubbell*, 530 U.S. 27, 36–37 (2000).  Motions practice surrounding such hypothetical subpoenas would have been conducted while devices which the government had probable cause to believe contained classified national defense information remained unprotected and exposed to adversaries.  Moreover, concerns about the efficacy of a subpoena in this context have proven far from hypothetical, as the Washington Post, for its part, has refused to respond to the subpoena it received, citing the issues in this litigation, even though Movants suggest that a subpoena would have been the best path forward for the Government.  *See* Ex. 1, Jan. 27, 2026 Ltr. from Simon Latcovich to Michael Hanlon.  In light of these considerations the Government's decision to seek a search warrant was reasonable.

### CONCLUSION

This Court should vacate the Magistrate Judge's order and permit the Government to follow its proposed filter-team protocol.

---

[9] That Ms. Natanson provided incorrect information to agents about the number of electronic devices in her house and whether they used biometrics reinforces the Government's choice to use a search warrant.  *Compare* Rozhavsky Decl. ¶ 25, *with* ¶¶ 29, 32.

Dated: March 31, 2026                    Respectfully submitted,


                                         BRETT A. SHUMATE
                                         Assistant Attorney General
                                         Civil Division

                                         JOHN A. EISENBERG
                                         Assistant Attorney General
                                         National Security Division

                                         ERIC J. HAMILTON
                                         Deputy Assistant Attorney General
                                         Civil Division, Federal Programs Branch

                                         */s/ Joseph E. Borson*
                                         JOSEPH E. BORSON (Va. Bar No. 85519)
                                         Assistant Branch Director
                                         Civil Division, Federal Programs Branch

                                         CHRISTIAN DIBBLEE
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, D.C. 20005
                                         Tel: (202) 514-1944
                                         Email: Joseph.Borson@usdoj.gov

                                         *Counsel for the United States*